IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ARRIS GROUP, INC.,**<br>*Plaintiff*,<br><br>v.<br><br>**LEADER ELECTRONICS INC.,**<br>*Defendant*. | )<br>)<br>)<br>) Case No.: 14 cv 00345<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff ARRIS Group, Inc. and its subsidiaries (hereinafter, "ARRIS"), through its attorneys, complains of Defendant, Leader Electronics Inc. ("Defendant" or "Leader"), as follows:

### NATURE OF THE DISPUTE

1. This is a claim for indemnification and damages arising from Defendant's numerous breaches of contract. Subject to terms and conditions contained in a Corporate Supply Agreement ("CSA") dated June 28, 2006 between Leader and ARRIS' processor-in-interest which was lawfully assigned to ARRIS as discussed below, ARRIS purchased power supplies (the "Power Supplies") from Leader for telecommunications modules sold to a third party for use in Japan. For confidentiality reasons, the CSA is not attached hereto, but the relevant portions are quoted herein, and Leader is in possession of the complete agreement.

2. Under the CSA, Leader committed, among other things, to indemnify ARRIS for any losses attributable to defects in the Power Supplies, and further warranted that the Power Supplies would be merchantable, free from defects in design, material and workmanship, of the highest quality, and would conform to the terms and conditions of all applicable schedules and specifications, drawings, documentation, customer test and quality standards, applicable industry

standards, and would not pose any potential safety issues. Leader further agreed it would make no changes to the products, the materials, or the manufacturing process, without ARRIS's approval.

3. Leader breached its obligations by selling ARRIS defective power supplies that posed a potential safety hazard, in violation of its express representations and warranties. Further, upon information and belief, Leader made unauthorized and undisclosed changes to the Power Supplies, which were fundamental in causing the products to become defective and to fail to conform to Leader's foregoing warranties and contractual requirements.

4. Specifically, through its customers, ARRIS learned that Japanese regulatory authorities had been notified of complaints that components of Leader's Power Supplies were found to excessively overheat, melt, and ultimately fail, even when used within the products' specified operating parameters. As a result, the Japanese regulatory authorities have determined that the Power Supplies present a safety risk. The presence of this safety risk requires ARRIS to spend time, money, and effort recovering and replacing the affected and potentially affected Leader Power Supplies in its customers' and their end users' possession, damaging ARRIS significantly. ARRIS will also be required to spend significant additional money in the future recovering and replacing defective units in the field.

5. Despite repeated demands from ARRIS for Leader to honor its contractually-mandated indemnification obligations and compensate ARRIS for its losses, Leader has refused to make fulfill its obligations under the CSA.

**PARTIES**

6. ARRIS Group, Inc. is a Delaware corporation with its principal place of business currently in Suwanee, Georgia.

7. By virtue of the divestiture of Motorola, Inc. (the original party to the CSA with

2

Leader), and acquisition by ARRIS Group, Inc. of Motorola Home, formerly a division of Motorola Mobility, ARRIS is the successor-in-interest of Motorola Mobility and Motorola, Inc., for purposes of this case, and owns all rights, title, and interest to all of Motorola Mobility's and Motorola, Inc.'s claims, rights and obligations under the CSA. Motorola, Inc., Motorola Mobility, Motorola Home, and ARRIS Group, Inc., are herein collectively referred to as "ARRIS."

8. On information and belief, Leader is a Taiwanese corporation with its principal place of business in Taipei, Taiwan.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Leader is a citizen of Taiwan, and is not known to have any permanent residence or place of business in Delaware, Georgia, or Illinois.

10. This Court has personal jurisdiction over the Defendant pursuant to 735 ILCS 5/2-209 because the CSA provides that all disputes are to be brought in any state or federal court "in Northern Illinois, USA." CSA § 16.2. Furthermore, Leader at various times directed specific acts giving rise to this suit (including executing and performing the CSA) to the State of Illinois.

11. Venue is proper in this Court because the parties have contractually agreed to venue in this Court. Further, venue is proper under 28 U.S.C. § 1391(b)(2) because of the substantial connections of this case to the Northern District of Illinois, including, *inter alia*, that the CSA was executed in Illinois by ARRIS' predecessor-in-interest, Motorola, Inc., and performed by Motorola, Inc., Motorola Mobility, Inc., and ARRIS in Cook County, Illinois, and that ARRIS continues to maintain a presence in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

12. Beginning in 2006, ARRIS purchased Power Supplies from Leader for use with telecommunications products that were then sold by ARRIS to customers in Japan.

13. Leader accepted ARRIS' orders, which were subject to the terms and conditions contained in the CSA, and delivered the Power Supplies to ARRIS in return for good and valuable consideration.

14. Leader agreed, and was contractually obligated to deliver non-defective products that did not pose a potential safety risk.

15. Under the terms and conditions of the CSA, Leader warranted that "each Product is free of any defect that would pose a potential safety hazard." (CSA § 6.4.)

16. Leader further warranted the future performance of the Power Supplies, *inter alia*, as follows:

> Further, unless specified otherwise in the applicable Product Schedule, for a period of thirty (30) months from the date of Product delivery or for the period of [Leader's] standard warranty, whichever is longer, [Leader] expressly warrants that all Products are free from defects in design, materials and workmanship, are appropriately labeled and packaged, meet the Quality requirements set forth in Section 9 below, and conform to the Product specifications. All warranties run to [ARRIS], and through [ARRIS], to its customers. All warranties survive any inspection, acceptance, payment, or resale by [ARRIS].

(CSA § 6.4.)

17. Leader committed that all of the Power Supplies would "be in conformity with the Product specifications, … satisfy [ARRIS's] test and quality standards, meet applicable industry quality and performance standards, comply with all applicable legal and regulatory requirements, and be merchantable and fit for the purpose intended by [ARRIS]." (CSA § 9.1.)

18. Pursuant to the CSA, Leader agreed to indemnify ARRIS for any claims or

4

damages arising from Leader's manufacture and delivery of the Power Supplies. Specifically:

> [Leader] will indemnify, defend and hold harmless [ARRIS] and its affiliates, customers, distributors, officers, directors, employees, contractors, successors, assigns, and agents (the "[ARRIS] Indemnitees") against all Claims that arise out of, or are connected with, [Leader's] acts or omissions under this Agreement … including without limitation the delivery of Products that are defective, non-conforming, or that otherwise fail to comply with [Leader's] warranties as set forth in this Agreement. [Leader] will reimburse the [ARRIS] Indemnitees for all losses, costs, and expenses the [ARRIS] Indemnitees incur as a result of such Claims, including court costs and attorneys fees.

(CSA § 11.2.) "Claims" is defined in section 11.1 of the CSA as "claims, damages, expenses, suits, losses, or liabilities."

19. Leader further agreed that, if it delivered products that were not merchantable, fit for ARRIS' intended purpose, presented a potential safety risk, or otherwise failed to comply with the contractual requirements, Leader would be liable for, among other things, all of ARRIS' "costs, charges, fines, penalties, or damages incurred by [ARRIS] or its customers related to the affected Products." (CSA § 6.7(v).)

20. Leader also agreed ARRIS would have additional remedies if Leader delivered Power Supplies that experienced "Excessive Failure", defined as "(i) a repetitive and material failure of a Product to meet and operate in accordance with the applicable Product specifications; or (ii) a defect that occurs in more than forty (40) Parts Per Million ('PPM') … of any lot, batch, or other separately distinguishable group of Products; or (iii) a condition that in [ARRIS'] opinion presents a potential safety or regulatory issue." (CSA § 1.3(b).)

21. More specifically, Leader agreed to the following additional remedies in the event of an Excessive Failure:

> In addition to the other rights and remedies provided in this Agreement, in the event an Excessive if at any time one or more of the Products experiences an Excessive Failure, then: (i) [ARRIS],

at its option, may reschedule or cancel all Orders and Forecasts for the affected Product without liability of any kind, including but not limited to the liability for raw materials, work-in-process, or finished goods [Leader] may have on-hand for the Order or the Forecast; (ii) [Leader], at its sole expense, will take immediate remedial action for impacted and potentially impacted Products, according to a corrective action plan approved by [ARRIS]; and (iii) [Leader] shall be liable for all customer charges or penalties [ARRIS] incurs in connection with the affected Products.

(CSA § 6.8.)

22. Leader further agreed under the CSA that "[Leader] will not make changes to Products or changes to the processes, BOM, materials, design, tools, or locations used to manufacture, assemble, or package the products without Motorola's prior written approval." (CSA § 8.1.)

23. Leader agreed that all of ARRIS' rights and remedies provided in the CSA are cumulative and that they are in addition to all other available rights and remedies available under law or at equity. (CSA §§ 6.7, 17.6.)

24. After the tender of delivery and subsequent use of the Power Supplies with ARRIS' products and sale of those products to ARRIS' customers in Japan, components of Leader's Power Supplies were discovered to be overheating, melting, and ultimately failing to operate (the "Overheating Defect").

25. Upon root cause analysis, it was determined that the cause of the failures was Leader's unauthorized material changes and inadequate manufacturing process.

26. Due to the latent nature of the Overheating Defect, ARRIS did not discover and could not have discovered it through ordinary diligence, until such defect actually manifested itself in the field and after a thorough root cause analysis could be conducted.

27. Japanese regulatory authorities have concluded the defective Power Supplies pose a safety risk to Japanese consumers, requiring ARRIS and its customers to take remedial action,

which has caused ARRIS to incur substantial expenses and will cause substantial future cost to ARRIS.

28. The failures of Leader's Power Supplies has caused, and on information and belief will continue to cause, ARRIS substantial damages in the form of, inter alia, costs paid to repair and/or replace the defective Power Supplies, costs incurred to identify the root cause of BBU failures, and other damages, all of which are at present well in excess of $75,000.

29. Upon learning of the failures, ARRIS promptly turned to Leader, as the product designer, manufacturer, and expert, to indemnify it for its losses, and to honor Leader's warranty and remedy obligations. Leader has refused to fulfill its obligations.

30. ARRIS has engaged in good faith efforts to negotiate a resolution of the disputes; however, those efforts have been unsuccessful.

31. Therefore, on or around December 16, 2013, ARRIS served its demand for mediation on Leader pursuant section 16.2 of the CSA. However, Leader has thus far refused to participate in mediation.

## COUNT I
## BREACH OF CONTRACT

32. ARRIS re-alleges and incorporates by reference the allegations in Paragraphs 1-31 of this Complaint as though set forth fully herein.

33. The parties entered into a binding and enforceable contract, which included obligations to indemnify ARRIS, obligations to reimburse ARRIS for "Excessive Failure" as defined by the CSA, obligations not to change the design or manufacturing method of the Power Supplies without ARRIS's consent, and express warranties regarding future performance and all other warranties and obligations implied by law.

34. ARRIS performed all its obligations under the CSA and applicable law.

35. Leader breached, both affirmatively and anticipatorily, its express and implied obligations, including, inter alia, sections 6.4, 6.7, 6.8, 8.1, 9.1 and 11.2 of the CSA, by, among other things: (a) failing to indemnify ARRIS for losses caused by Leader's defective goods; (b) refusing to indemnify ARRIS for anticipated future losses relating to remediation of the defect; (c) upon ARRIS' information and belief, making unauthorized changes to the design and/or manufacturing process for the Power Supplies which led to the defect at issue; and (d) failing to deliver to ARRIS products that conformed to all express and implied warranties, specifications, and other requirements.

36. Leader's breaches of the CSA and related implied warranties and obligations proximately caused ARRIS significant damages, at present in excess of $75,000, and will on information and belief continue to cause ARRIS damages.

WHEREFORE, ARRIS asks that this Court enter judgment in its favor and against Leader in an amount in excess of $75,000 to be determined at trial, plus costs, fees, and interest, and award to ARRIS such further monetary or equitable relief as this Court deems fair and just.

## JURY DEMAND

ARRIS Group, Inc. demands a trial by jury on all issues so triable.

Dated:  January 17, 2014

Respectfully submitted,
ARRIS GROUP, INC.

By: s/ Peter N. Moore
    One of its Attorneys

Mark L. Durbin (mark.durbin@btlaw.com)
Peter N. Moore (peter.moore@btlaw.com)
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646